The next case today is COOPERATIVA de Ahorro y Cred. de Dr. Manuel Zeno-Gandia et al. v. the Financial Oversight Management Board et al. Appeal Number 191391. Mr. Ramos, whenever you're ready. Thank you, Your Honors. For the record, Guillermo Ramos Ruina, and I appear before you on behalf of three Puerto Rico credit unions that, along with other credit unions, have been plaintiffs to an adversary proceeding that is part of the Title III PROMESA case that has been pending since March 22nd, 2018. In that adversary proceeding, these three appellants, along with the other four credit unions, have filed a complaint that has been amended now twice, in which they raise numerous allegations pertaining to the government of Puerto Rico and other entities, including COFINA, that forced them or coerced them to invest in Puerto Rico funds, including COFINA bonds, and that litigation is still ongoing. That litigation was commenced before the confirmation plan on COFINA was even announced, and as part of that confirmation process, the court made a specific ruling or provision on the confirmation order, which is found at paragraph 30 of the confirmation order, page 30 of the addendum to our brief, in which the court carved out an exception to the release that is the subject of paragraph 30 of the confirmation order, that specifically names the adversary proceeding. It's at the tail end of paragraph 30 of the order, addendum 30, that reads as follows, that the release does not apply as it pertains to the plaintiffs in certain adversary proceeding before a Title III court, captioned Cooperativa de Horror y Crédito Ramrosa et al., the Commonwealth of Puerto Rico, adversary proceeding number 1828, shall be entitled to continue pursuit of such litigation against all parties other than COFINA and reorganized COFINA, subject to all available rights and defenses with respect to claims and causes of action asserted therein. Our clients, the reason for my clients appealing the confirmation plan is that they are precluded from continuing to assert their claims against COFINA and reorganized COFINA as per this provision of the confirmation order. And that is a summary disposition without any hearing or without any evidence of their claims. And that violates their constitutional right under the Petitions Clause to seek redress from government for grievances, which has a component that under the Petition Clause and as the cases that we have cited, one of the ways to seek grievances is to go to court and file a complaint and get the complaint ruled upon on the merits. And by this provision, my clients are completely precluded from continuing to assert those claims when there has been no judicial finding pertaining to them. And that summary disposition, we respectfully submit, violates the Petitions, First Amendment Petition Clause and due process. And that is the gist of our contention. In terms of what the potential exposure of that claim is for COFINA, in our reply brief at page 6, we gave the numbers. These three appellants had in aggregate COFINA bonds a mere $43 million, which in the scheme of $18 billion of COFINA funds is the minimus for COFINA, but it's a large amount of money to my clients. And that's why they would like to continue to pursue this action. Could you help me with a practical question? As I understand it, these claims that you're litigating, they're unsecured claims. Well, they are, yes. And COFINA was insolvent? That might be. So what is the value of an unsecured claim against an insolvent party in a bankruptcy proceeding who's getting discharged? Well, our claim in the adversary proceeding, we are asserting the, you know, we're complaining from the government of Puerto Rico through its different agencies, particularly the regulating agency over the credit unions, which by its Spanish acronym is COSEC. Our complaint is that the government of Puerto Rico through COSEC and the government development bank coerced our clients to, you know, purchase these bonds when the government, at a time that the government already knew that the government did not have money to repay those bonds and with the only purpose of continue to finance the government. And that is improper. And we are asserting various constitutional claims, including a takings claim as to those. So I think you just said, if I heard you correctly, that you not only have a claim against an insolvent bankrupt debtor, you have a very good claim on the merits against an insolvent bankrupt debtor. So I come back to my question of what value is that to your clients? We you know, as we understand it, COFINA was part of, you know, we have alleged that this is part of a scheme of a larger scheme by the government. And COFINA being part of the scheme, you know, is certainly liable as far as part of the perpetrators of the scheme that defrauded the credit unions and their deposit holders. Are you alleging facts that would call for a holding that the debt to your clients, the unsecured debt, was non-dischargeable? That is one of the claims that we are making as part of the adversary proceeding, Your Honor. And what's the basis for non-dischargeability by COFINA? That is, that is, that is a part of a fraud. And so if we look at your complaint, we'll find specific facts alleging fraud by COFINA? Yes. What is the bankruptcy? What is the bankruptcy provision that you cite to to claim that a fraud claim against a non-person is not dischargeable? The whole, you know, there's a basic principle in bankruptcy law that, you know, a discharge is only available to the honest debtor. In a personal bankruptcy, I know that to be true. What's your authority for that in a non-personal institutional bankruptcy? The basis that we have cited is Section 105, which is the general equity provision that, you know, that allows bankruptcy courts to issue any orders based on equity. Let me ask you another practical question. Is, is, does the COFINA, the discharged COFINA, continue as an entity and have assets? Well, the way, the way the plan was structured right now, it does not. So I'm still puzzled as to practicalities, even if you then establish the claim is non-dischargeable, what good does it do you if they have no assets? You know, we, we are, Oh, well, I don't think we have included, I would like to, I would like, I would like to see the complaint. I don't, I don't think we included the new COFINA entity. So that is a practical matter that, you know, honestly, you know, we have not looked into. We, what our, our complaint is that we have a valid claim. We have a certain claim that it predates the plan. We would like to pursue it. And the way it was, and we have been, the road has been taken out of our feet without any process whatsoever. And, and that, you know, we, it's contrary to all basic tenets of due process. And I'm just puzzled as to why your clients would pursue a claim if they knew at the outset that even if they win, they get nothing. Well, we, we certainly are not looking for nothing. Mr. Ramos, if you'd like to take a minute and wrap up. No, I think we have, I think I have raised the gist of, of, of, of our claim. You know, it's very discreet. And, and the, and the, the remedy, I would only address what, what the remedy, the remedy would be to simply strike from the confirmation order, the language that other than Covina, I don't know, it would be, I think what's, there's some cases out there that calls that a blue penciling. Or that's, I think that's a concept. It would be just striking out and that would allow our clients to continue to pursue the claims in, in adversary 1828, which is, which is what they're after. All right. Thank you. If you would mute your device, I have Mr. Bean in stock, but I hesitate to suggest that you're first. So whoever's supposed to go first should do so. Okay. That's me, your honor, Peter Friedman. Okay. So your honor, I want to focus on equitable mootness other than to say that the 105, section 105 argument that was just proposed is directly contrary to a Supreme Court case called Law v. Siegel, 571 U.S. 415 that said 105 can't be used to basically fill in places where, where there's a specific holding of the bankruptcy code. Bankruptcy code discharge doesn't apply. The discharge exception for fraud doesn't apply to corporate debtors. It's the logic of, of Siegel is directly on point that you can't use 105 to fill that kind of gap. With respect to equitable mootness for this claim, a lot of it does depend on what's actually being sought. If no, if the, if this appeal is about a discharge, a discharge means that in effect, the bankruptcy never happened. And you, and so plaintiffs would be able to pursue a $43 million claim against new COFINA as if the bankruptcy never happened. New COFINA does have some resources, but very, very, very few. The vast majority of its resources are subject to statutory liens. It doesn't have $43 million. And so the reason I think this is equitably moot is that it would again cause major issues with respect to COFINA, to a finding that COFINA would be feasible, to a finding that COFINA would have to defend a lawsuit for which it simply doesn't have assets set pay, which could cause severe disruption to COFINA in the future. When you look at the three issues for equitable mootness, I think all of them are satisfied here. And I refer the court to the Ninth Circuit's decision in Stockton, which is 909 F3rd 1256, where basically the court notes that the appellant did not seek, take the minimal steps of the bankruptcy court, not before the district court, not before us. And the claim was properly, you know, the appellant, the equitable mootness completely applied. It applied to constitutional claims there, just like there are purported constitutional rather similar claims here. I think if what appellants want is the ability to act as if the bankruptcy never happened for COFINA and threaten the future of COFINA, all of the prongs of equitable mootness would be met here. And it would be completely appropriate to dismiss this without addressing the merits at all. Questions from the judges? Your Honor, one other point I should make is if you look at the transcript from the hearing before Judge Swain, the cooperative has basically said that what they wanted on page 27 of the day two transcript was they wanted language that would come at probably no significant cost to COFINA's organization process. That's what they were sort of asking for Judge Swain to do, to change in connection with the order. And obviously in terms of equitable mootness, they're now, you know, I think they're now seeking relief to the extent that they're really proposing an argument based on no discharge that would be directly contrary to that. Again, having failed to prosecute that vigorously and having taken a very different position below, it seems like precisely the kind of case where equitable mootness ought to apply. Thank you, Your Honors. Thank you. If you would mute your audio. So Mr. Cooper or Mr. Bienenstock. Your Honor, again, good afternoon and good health. May it please the court. My name is Martin Bienenstock of Proskauer Rose, LLP for the Financial Oversight and Management Board of Puerto Rico as COFINA's Title III representative. First, I want to wholeheartedly agree with Judge Kayada's questions. The fact is, as you heard earlier, all of the senior and junior COFINA bondholders are secured by COFINA's assets, which are only the sales and use taxes. So having an unsecured claim against a company having nothing else is of no value other than, obviously, this is America. There's always nuisance value. But other than that, there's no value. The crux of the case, we believe, is that as admitted in page 14 of their appellant opening brief, they're complaining that the government's active malicious advice and inducement of plaintiffs through COSEC's regulatory power to pressure them into buying excessive amounts of Puerto Rico debt securities with full knowledge of the unsafe, unsound, and imprudent nature of the investments, end of quote, is what causes a liability to them and a basis for non-dischargeability. The important thing to note is that it wasn't that they're saying COFINA did it. They admit at page 26 of the opening brief that, quote, COFINA has no actual operations, provides no public services, and that its only purpose is to act as a financial conduit for the issuance and payment of debt backed by the Commonwealth sales and use taxes, end of quote. So you're talking about a finance entity that really exists on paper. And they're saying that other people in the government, like COSEC and elsewhere, caused credit unions to buy debt that they knew was not good debt. I'm obviously not going to get into the merits of that. But the complaint is not and cannot really be against COFINA because COFINA was nothing and had nothing to do these purportedly evil acts. And that's why in the provision that was pointed out to your honors in the confirmation order and findings, Judge Swain left all their claims against everybody else alive and well. And that's why their adversary proceeding for all types of wrongfulness, dishonesty, is alive and well against people who at least might have, could have done something wrong to them. COFINA both has nothing for them and could not have done anything wrong to them. And that's why Judge Swain's decision is so well founded. As for the statutory basis for non-dischargeability, the bottom line is that bankruptcy code section 944, which comes out of chapter 9. And section 944 only has two exceptions for dischargeability. One is if the plan or confirmation order says a claim is not discharged. And the other is if the creditor had no knowledge or notice of the case. Now we know neither one apply. Otherwise they would have used it. So now they go to section 105. While we concur in the Supreme Court citation your honors were given, the court doesn't even have to go that far. The language of section 105a says the court may issue any order to carry out the provisions of the bankruptcy code or of this title. And in PROMESA this title is re-engineered to be the title that PROMESA is in. Well, what appellants are asking your honors to do is to use 105 to override the provisions of this title because they're asking for you to impose a law other than section 944. And to go one step further, what appellants are doing and while, you know, if they were defrauded, etc., obviously we are sympathetic to them. But what they're doing here is wrong from a bankruptcy point of view. They are opposing the plan because they have other claims that they want to survive in perpetuity for what I suggested earlier might be nuisance value. If they had enough debt to have swayed the vote on the acceptance or rejection of the plan, other creditors would have been within their rights to ask to designate their votes under section 1126E of the bankruptcy code, which says we don't count votes coming from people who have ulterior motives. Now, there were no such 1126E motions made in this entire case, including against appellants. But against them, the only reason would be they didn't have a large enough claim to make a difference in the calculation of whether the plan should be accepted or rejected. Now, finally, they make a lot in their briefs that discharge is only granted to the honest debtor, and there are a lot of Supreme Court decisions saying that, and we acknowledge it. The problem with their argument is that all those cases refer to human beings who are honest debtors or dishonest debtors. When it comes to an inanimate object like Kofina, punishing Kofina because it did something wrong, even if it had done something wrong, does not punish Kofina at all. It punishes Kofina's other creditors, and that's why there are no exceptions to dischargeability for wrongful intent or acts when it comes to Kofina. Unless the panel has additional questions, those were all my remarks, Your Honors. Perfect timing. If you would mute your device. Mr. Cooper. Thank you, Your Honor. David Cooper on behalf of the Kofina Senior Bondholders Coalition. And again, I'll be speaking only on the issue of equitable mootness. The creditors, Kofina and the Commonwealth agreed to, and the district court approved a plan with a particular allocation of funds. The appellants are asking for a different allocation that the parties did not agree to, and the district court did not approve. They say that it's de minimis. We disagree that $43 million is de minimis. But regardless, as I mentioned in the prior appeal, there is no legal basis for treating the appellants differently than other creditors. And the bottom line is that different allocation of funds is, by definition, a different plan. And that would mean that the current plan is void with all of the enormous harms that go along with it. That is why this court has said, quote, there's a strong presumption that an appellate court will not be able to fashion an equitable and effective remedy once a plan has been confirmed. That has long been this court's precedent. And even though that has been this court's precedent, the appellants chose not to seek a stay when they could have potentially had their merits considered before all these harms would occur if they were granted relief. If there are no other questions on equitable mootness, I'll rest on those grounds and those stated in our brief. All right. Thank you all. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.